# NIX *v.* ALLEN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

Submitted October 17, 1884.—Decided November 3, 1884.

The exercise of a pre-emption right under the act of September 4, 1841, 5 Stat. 453, by an entry of one-quarter of a quarter section of land, was an abandonment of the right to enter under that act for the remaining three-quarters of that quarter section.

A person who, on the 8th March, 1870, had a title by patent to a quarter of a quarter section of land and lived in a house erected upon it, and cultivated the remaining three-quarters of the quarter section without title, did not reside upon the three-quarters so cultivated, within the meaning of ch. 289, Acts of Arkansas, 1871, which gave persons then residing upon lands belonging to or claimed by the Cairo and Fulton Railroad Company, or its branches, the right to purchase them not to exceed 160 acres.

The facts which make the case are stated in the opinion of the court.

*Mr. A. H. Garland* for appellant.

*Mr. J. H. McGowan* (*Mr. John F. Dillon* was with him) for appellees.

Mr. Chief Justice Waite delivered the opinion of the court.

This is a suit in equity, brought by the appellant, in the Circuit Court of the United States for the Eastern District of Arkansas on the 2d day of May, 1879, to enjoin the execution of a judgment in ejectment recovered against him by the appellee at the then last April term of that court, for the possession of the west half and the southeast quarter of the northeast quarter of sec. 30, T. 15 S., R. 28 E., in Arkansas, and to obtain a conveyance of the legal title to the property on the ground that Allen holds it in trust for him.   The case shows that in 1846 Sarah Nix, the mother of John B. Nix, then a minor residing with her, took possession of the whole of the northeast quarter of the section.   Mrs. Nix had all the legal qualifications of a pre-emptor, and while in possession built a house on the northeast quarter of the quarter section, and cleared and cultivated a portion of the land on that and on each of the other quarters of the quarter.   The principal part of the clearing and cultivation, however, was on the quarter where the house stood.

On the 9th of February, 1853, Congress passed an act granting lands to the State of Arkansas to aid in building a railroad from a point on the Mississippi opposite the mouth of the Ohio to the Texas boundary line near Fulton, in Arkansas.   10 Stat. 155.   The lands now in question lie within the limits of that grant, and were withdrawn from entry on the 19th of May, 1853, but the granting act contained the usual reservation in favor of pre-emption settlers.

On the 22d of April, 1853, Mrs. Nix made and filed her declaratory statement and proof for the pre-emption of the whole of the northeast quarter of the section.   In her statement she fixed the first of April, 1853, as the date of her settlement on

the lands. At the time of filing the statement and proof she made no payment.

On the 27th of March, 1854, Congress passed the following "act for the relief of settlers on lands reserved for railroad purposes." 10 Stat. 269.

"That every settler on public lands which have been or may be withdrawn from market in consequence of proposed railroads, and who had settled thereon prior to such withdrawal, shall be entitled to pre-emption at the ordinary minimum to the lands settled on and cultivated by them: *Provided*, They shall prove up their rights according to such rules and regulations as may be prescribed by the Secretary of the Interior, and pay for the same before the day that may be fixed by the President's proclamation for the restoration of said lands to market."

On the 31st of March, 1854, Mrs. Nix made a pre-emption cash entry of the N. E. ¼ of the N. E. ¼ of the section, and a patent for this tract was issued in her name under that entry on the 10th of December, 1874. In her affidavit to support the entry she fixed the first of April, 1853, as the date of her settlement, the same as in her original declaratory statement. It is now claimed that this entry was not her own act, but the testimony shows unmistakably that it was. She was feeble at the time and unable to go to the land office herself, but the business was done for her by Benjamin Nix, her nephew and the guardian of John B. Nix, who furnished the money to make the payment from funds in his hands as guardian. Mrs. Nix had no means of her own, and the fifty dollars which was required to pay for the forty acres was all that John B. had. Neither the mother nor the son were able to buy more than was then entered. On the 28th of September, 1858, Mrs. Nix conveyed the land she entered to John B., who arrived at full age during the year 1857.

Mrs. Nix and John B. Nix lived together in the house on the N. E. ¼ of the quarter section until her death in 1863, and John B. remained there down to the time he filed the bill in this case. While occupying the northeast quarter of the quarter they have used and cultivated some part of the other quarters,

but the actual residence, both of the mother and son, has always been on the part that was entered by and patented to the mother. Mrs. Nix left other heirs besides John B. Nix, some of whom were living when this suit was begun.

On the 16th of January, 1855, the State of Arkansas transferred the grant of Congress, so far as it related to the lands in dispute, to the Cairo & Fulton Railroad Company, " subject to all the conditions, limitations and restrictions contained in the act of Congress aforesaid, and in the act of Congress entitled ' An Act for the relief of settlers on lands reserved for railroad purposes,' approved March 27th, 1854." The act by which this transfer was made contained the following provision :

" That citizens or heads of families, being settlers or occupants previous to the passage of this act, on the land herein transferred to the said Cairo & Fulton Railroad Company, shall each be entitled to a preference right of entry of any legal subdivision of land not exceeding one hundred and sixty acres, which shall be upon such legal subdivision as will include the residence of the said settler, which preference right shall be at the price of two dollars and fifty cents per acre, which preference right of entry shall exist from the passage of this act, and for three months after notice has been given for three successive weeks in a newspaper published in the city of Little Rock, that the said land is in market." Laws of Ark. 1854–5, 150, § 1.

This provision of the act of 1855 was repealed on the 26th of November, 1856, and the following enacted in its place :

" SEC. 2. Every person who, on the 9th day of February, 1853, occupied, by residence and cultivation thereon, any tract of land comprised in the grant made by virtue of, and under the provisions of such act of Congress of February 9th, 1853, may purchase from said Cairo & Fulton Railroad Company, at two dollars and fifty cents per acre, the legal subdivision of such land as shall include his residence and actual improvements, not to exceed one quarter section, by complying with the following conditions :

" SEC. 3. Such claimant shall, within three months after said lands are selected and confirmed to said company, and a list or

plàt thereof filed in the recorder's office in the county in which such lands may lie, file with the Auditor of State his own affidavit, accompanied by the affidavits of two disinterested freeholders of his county, describing the land claimed by legal subdivisions, proving the fact of such occupancy, residence and cultivation upon such legal subdivision with the view to actual cultivation and settlement, before the day above specified, said company may, by giving reasonable notice to such claimant, appear before the auditor and controvert the facts set forth in such affidavits, and the auditor may swear witnesses, hear proof, and, for cause shown, set aside any such claims: *Provided*, That no such claim shall be set aside for misdescription, or error in form only, founded on mistake; but on affidavit showing such mistake, reasonable time may be given for the filing of corrected proof.

"Sec. 4. Said claimant shall after three months, or as soon thereafter as said company shall be in a condition to make title, pay to said company the consideration for said land as hereinbefore provided, whereupon he shall be entitled to receive from said company a deed for the same, but in case of failure to file said proof or pay said consideration money within the respective time specified, the right to make such purchase shall cease." Laws of Arkansas, 1856, 4.

On the 1st of February, 1859, another act was passed on the same subject, which contained this provision:

"Sec. 3. *Be it further enacted*, That every person who, on the 1st day of November, 1858, resided on or cultivated any improvement on any of the land comprised in the grant made by virtue of the act of Congress approved February 9th, 1853, may purchase from the said Cairo & Fulton Railroad Company, at two dollars and fifty cents per acre, one hundred and sixty acres, which may include the actual residence or the farm of such person, as he or she chooses to elect, by complying with the conditions prescribed by an act passed by the last General Assembly of this State, entitled 'An Act to amend an act to aid in the construction of the Cairo and Fulton Railroad,' approved January 16th, 1855, which act was approved November 26th, 1856: *And provided further*, That until such default

mentioned in said act, the owners of such improvements shall be entitled to use and occupy the same free of rent or charges." Laws of Arkansas, 1858-9, 62.

And, finally, on the 28th of March, 1871, the following was enacted:

SECTION 1. "That where any settler, who, on or before the eighth (8th) day of March, 1870, was residing and made improvements on the lands belonging or claimed by the Cairo and Fulton Railroad Company, or its branches, shall have the right to purchase the same, not to exceed one hundred and sixty acres, under the legal subdivision of said lands, and including the homestead and improvements of such settler, at not exceeding the rate of two dollars and fifty cents ($2.50) per acre, in preference to any and all other persons, from and after the passage of this act, and for three (3) months after said land has been advertised according to law."

SEC. 2. "That any person authorized to purchase land under the provisions of section one (1) of this act, tender to the authorized agent of said Cairo and Fulton Railroad Company, at the principal office of said company, or at the principal office of the branches of said Cairo and Fulton Railroad Company, and to the authorized agent thereof, the amount of the purchase money of said land and demand a title therefor or his preference right thereto shall be barred." Laws of Arkansas, 1871, 289, ch. 59.

On the 13th of July, 1857, the Commissioner of the General Land Office certified these lands with others to the Cairo & Fulton Railroad Company under its grant, and on the 18th of February, 1858, the company filed in the recorder's office of Lafayette County, which then embraced the lands in dispute, a list of all lands in that county "selected and confirmed to that company."

On the 15th of April, 1874, the land commissioner of the railroad company published in the Arkansas Daily Gazette a notice that the lands of the company between Little Rock and the Texas line would be sold at the office of the company on and after June 16, 1874, reserving, however, mineral lands and lands through which the road ran. The road went through

the northeast quarter of this section. The Gazette was a newspaper published at Little Rock, and designated by the governor of the State for the publication of official notices, and the advertisement was continued from the 15th of April to the 15th of June, 1874. The notice also called on all actual settlers who had not made application to purchase to do so before the day of sale. On the 28th of July, 1874, John B. Nix went to the land commissioner of the company and claimed the right to purchase the northeast quarter of the section at two dollars and a half an acre. He, at the same time, tendered four hundred dollars in payment of the purchase money, and demanded a conveyance. The commissioner would not admit his right to buy, and refused his tender.

On the 14th of May, 1875, the company sold and conveyed the lands in dispute, being the one hundred and twenty acres, to Thomas Allen, the appellee, and on the 23d of the same month he began a suit against Nix to recover possession.

On the 19th of June, 1878, while this suit was pending, John B. Nix made application to the land officers of the United States as heir-at-law of Sarah Nix, to purchase the whole northeast quarter. under the pre-emption claim of his mother. At the same time he deposited with the register of the land office three hundred dollars " to pay out his mother's pre-emption." This application was refused.

Upon these facts the court below dismissed the bill, and this appeal was taken from a decree to that effect.

The claim of the appellant is, 1, that he has a complete equitable title to the lands under the acts of Congress as a pre-emptor; and, 2, that if this fails, the laws of the State gave him the right to purchase in preference to all others, and that he fully complied with all the requirements of those laws to complete and perfect his right of purchase before Allen, the appellee, got title. These will be considered in their order.

1. All the rights of pre-emption which the appellant sets up originated with his mother. In his application to enter the lands, made in 1878, he expressly bases his claim on her original settlement and his inheritance from her. He does not pretend that he made a settlement himself before the rights of

the railroad company accrued. In fact, he could not have made such a settlement, because he remained a minor until 1857, and the lands were withdrawn from market in 1853, on account of the railroad grant. Only persons over the age of twenty-one years could become pre-emption settlers. Such is the express provision of the pre-emption act. If, then, his mother, had she been alive, could not have made a pre-emption entry in 1878, he could not.

The settlement and claim of Mrs. Nix were made under the act of September 4, 1841, 5 Stat. 453, and in that statute it was expressly provided (sec. 10) that "no person shall be entitled to more than one pre-emptive right by virtue of this act." When, therefore, Mrs. Nix, on the 31st of March, 1854, made her pre-emption entry of the northeast quarter of the quarter section on which she settled, and as to which she filed her declaratory statement in 1853, she, in law, abandoned her settlement on the other three-quarters of the quarter section for the purposes of pre-emption, and surrendered all the pre-emption rights she ever had in them. This is clearly shown by the provision in sec. 13, "that before any person claiming the benefit of this act shall be allowed to enter such lands," he shall make oath "that he has never had the benefit of any right of pre-emption under this act." The right of pre-emption is the right to enter lands at the minimum price in preference to any other person, if all the requirements of the law are complied with. The prior settlement, declaratory statement and proof are not the pre-emption, but only the means of securing the right of pre-emption. By *entering* the forty acres in 1854, Mrs. Nix exhausted the one right of that kind which the law secured to her, and she could not claim another. She could have entered the whole one hundred and sixty acres at that time if she wished to, and had the money, but such an entry would have required two hundred dollars, and she had but fifty. The fifty would pay for forty acres, and so she bought that and gave up the rest. The law made no provision for entering a part of the quarter section at one time and saving a right to enter the remainder at another. The averment in the bill, therefore, that the payment of the fifty dollars at the time of the entry of the

forty acres was "intended as a part payment of the whole," cannot be true. The law permitted nothing of the kind.

The evident purpose of the act of March 27, 1854, was to aid pre-emptors. It gave the designated settlers the right of pre-emption, that is to say a preferred right to buy the lands on which they had settled under the pre-emption laws at the ordinary minimum price. If a settler had once had the benefit of those laws, this statute gave him no new right. He could not be a pre-emptor, because he could not take the necessary oath. Consequently, when Mrs. Nix, on the 31st of March, four days after the act of March 27 was approved, made her pre-emption entry of the forty acres, she exhausted all her rights under the act of 1854, as well as those under the act of 1841. It follows that the appellant has no right under the various acts of Congress which are relied on.

2. The Arkansas act of 1855, giving settlers and occupants a preference right of purchasing the lands thereby granted to the railroad company at two dollars and fifty cents an acre, was repealed by the act of November 26, 1856, before either the appellant or his mother attempted to avail themselves of its provisions. The act of 1856 required claimants to file with the Auditor of State certain affidavits within three months after the lands were selected and confirmed to the company, and a list and plat thereof filed in the recorder's office of the county in which the lands were situate. The list and plat of these lands were filed in the proper recorder's office on the 13th of July, 1857. No affidavits, such as the act required, were ever filed by the appellant or his mother in the office of the Auditor of State, and, for this reason, in accordance with the express provisions of § 4, " the right to make such purchase " ceased as long ago as the year 1857. The act of 1859 did not inure to the benefit of the appellant or his mother for the same reason. The privileges of that act could only be secured " by complying with the conditions prescribed" in the act of 1856.

This reduces the claims of the appellant to such as he has under the act of 1871. That act grants the privilege of a preference purchaser only to a " settler who, on or before the 8th of March, 1870, was residing and made improvement on the lands

belonging to or claimed by the  . . .  railroad company," which he desired to buy. This appellant on the 8th of March, 1870, *resided* on the northeast quarter of the quarter section. That land the company neither owned nor claimed. It was entered and paid for by Mrs. Nix in 1854, and she deeded it to the appellant in 1858. His title to that part of the quarter section is not disputed, and his *residence* has always been there. He *cultivated* parts of the other quarters of the quarter on the 8th of March, 1870, but he did not *reside* upon them or either of them. Under the circumstances, his residence was, in law, confined to the land he owned. Seeing this difficulty, he applied for the purchase of the whole quarter section, basing his claim apparently on the original settlement and declaratory statement of his mother for the pre-emption of that tract. In this way he sought to connect his residence upon the N. E. ¼ with his occupation of the other quarters. That he cannot do, as by the entry of the N. E. ¼ his mother separated her residence from the rest of the quarter section, and he has done nothing since to change that condition of things. It follows that the appellant is not entitled to the privileges of the act of 1871, and his claim, both under the acts of Congress and those of the State, has failed. This makes it unnecessary to consider whether the act of 1871 is constitutional. Good or bad it is of no use to him. The same is true of the claim that the company has no title because at the time the grant was made the land in question was occupied by Mrs. Nix as a pre-emptor. The appellant can recover only on the strength of his own title. If he has no title, it is a matter of no importance how weak that of his adversary may be.

*Decree affirmed.*