Benton C. CAVIN, Benton C. Cavin as assignee of Lorna M. Osburn, Benton C. Cavin, as assignee of Robin C. Cavin, Benton C. Cavin, as executor of the estate of Carl T. Cavin, Doreen N. Cavin, Lorna M. Osburn and Dennis C. Osburn, Plaintiffs–Appellants,

v.

The UNITED STATES,
Defendant/Cross–
Appellant.

Nos. 90–5098, 90–5106.

United States Court of Appeals,
Federal Circuit.

Feb. 13, 1992.

William F. Davis, William F. Davis Law Offices, Pacific Palisades, Cal., argued, for plaintiffs-appellants.

Ellen J. Durkee, Dept. of Justice, Environment and Natural Resources Div., Washington, D.C., argued, for defendant/cross-appellant. With her on the brief was Richard B. Stewart, Asst. Atty. Gen. Of counsel, David C. Shilton, Dept.

of Justice, Washington, D.C. Also on the brief was Ellen Hornstein, Office of General Counsel, Dept. of Agriculture, Washington, D.C., of counsel.

Before NIES, Chief Judge, NEWMAN and RADER, Circuit Judges.

RADER, Circuit Judge.

Benton C. Cavin, et al., sought compensation for the United States Forest Service's activities on real property claimed by the Cavins. The United States Claims Court dismissed Cavins' takings claims for untimely filing, dismissed Cavins' tort claims for lack of jurisdiction, and awarded the Cavins costs. *Cavin v. United States,* 19 Cl.Ct. 190 (1989). The Cavins appeal the dismissal and request transfer of their tort claims. The Forest Service cross-appeals the award of costs to the Cavins. This court affirms-in-part, reverses-in-part, and remands.

## BACKGROUND

This case concerns a 27-year dispute between the Cavin family and the Forest Service over ownership of 40 acres of mountain land. The Sierra National Forest in Soquel, California bounds the contested land on three sides. Thus, this land is called the "Soquel property."

In 1942, the Cavins purchased the property from a private party. At that time, the chain of title began with a deed dated October 5, 1899. After purchase, the Cavins logged the property and built roads, cabins, and a saw mill.

Over 20 years later, in a January 9, 1963 letter to the Cavins, the Forest Service questioned private ownership of the Soquel property. The Forest Service requested evidence of a patent conveying the land from the Government to a private party. The Cavins could not produce such evidence. Because the Cavins presented no patent, the Forest Service concluded that the Government retained ownership of the property. In a November 24, 1964 letter, the Forest Service informed the Cavins that continued occupancy of the land would constitute trespass.

Sometime in 1969, the Forest Service made alterations on the Soquel property. Over several years, the Forest Service realigned a road across the property (Road 6S–10), bulldozed along a streambed, removed timber, destroyed two cabins, and relocated the property lines. The Claims Court characterized the Forest Service's activities as follows:

[T]he Forest Service refused to institute legal action to settle the dispute, and instead resorted to extralegal tactics to provoke plaintiffs into suing the government. Apparently, the Forest Service declined to sue in order to force the Cavins into a position where they would bear the burden of proof of establishing ownership.

*Cavin,* 19 Cl.Ct. at 193. The Claims Court considered the Forest Service's conduct "highly offensive." *Id.* at 192.

Between 1963 and 1975, the Cavins retained several lawyers to help them establish title to the land. They also sought help from their congressional representative. The Forest Service allegedly advised the Cavins' congressman that the land patent application process under the Color of Title Act, *see* 43 U.S.C. § 1068 et seq. (1988) (last amended in 1953), would not settle the dispute. However, on recommendation of their third attorney, the Cavins filed a Color of Title application with the Bureau of Land Management (BLM) on February 17, 1976.

Following protracted administrative proceedings, on October 5, 1984, the Department of the Interior Board of Land Appeals (IBLA) approved the Cavins' land patent application. The IBLA reduced the property's price from the estimated value of $107,390 to $7,390 for equitable reasons. The Cavins paid this amount and received the patent.

While the IBLA considered the patent application, the Cavins filed seven administrative claims against the Forest Service under the Federal Tort Claims Act. *See* 28 U.S.C. § 2671 (1988). The Cavins sought compensation for some of the Forest Service's activities on the Soquel property from 1963 through 1984. They did not

seek compensation for the boundary relocation or the road relocation. On May 3, 1988, the Forest Service denied all seven claims. The Cavins did not seek review.

On March 27, 1987, the Cavins filed a *pro se* complaint in the Claims Court. Based on the Forest Service's activities, including alterations of the Soquel property, the Cavins sought $419,983.34 in damages. The Forest Service responded with a motion to dismiss the Cavins' taking action as untimely and to dismiss the Cavins' tort action as outside the Claims Court's jurisdiction. The Claims Court granted the motion. The court determined that the Cavins' inverse condemnation claim accrued in 1969 when the Forest Service began its activities. Therefore, the court applied the six-year statute of limitations to foreclose the Cavins' taking claims and dismissed the tort claims for lack of jurisdiction.

Although dismissing the claims, the Claims Court ordered the Forest Service to pay the Cavins' court costs. The Cavins appeal the dismissal of the takings claims and the denial of a transfer of tort claims to the district court. The Forest Service cross-appeals the award of costs.

## SOQUEL PROPERTY OWNERSHIP

As a threshold matter, this court must determine the ownership of the Soquel property before the IBLA granted the Cavins' patent application in 1984. The Cavins trace their title to the Soquel property back to a deed dated October 5, 1899. The Cavins, however, cannot produce any evidence of a patent conveying title to the land from the United States to a private party.

■ Before the 1984 land patent issued, the Cavins could not produce undisputed title to the Soquel property. Without undisputed ownership of the Soquel property at the time of the takings, the Cavins cannot maintain a suit alleging that the Government took their property without just compensation. *See, e.g., United States v. Dow*, 357 U.S. 17, 20–21, 78 S.Ct. 1039, 1043–44, 2 L.Ed.2d 1109 (1958); *Lacey v. United States*, 595 F.2d 614, 619, 219 Ct.Cl. 551 (1979). Therefore, the Cavins

did not have the requisite ownership to prosecute their takings claim.

■ The Cavins applied for a patent on the Soquel property in 1976. From 1976 until their payment for the property in 1984, the Cavins were merely claimants under the Color of Title Act. Claimant status endowed the Cavins with priority over later claimants to the same property, not with ownership. *Lipscomb v. United States*, 906 F.2d 545, 550 (11th Cir.1990). The Cavins' status as claimants under the Color of Title Act did not vest in them an equitable interest in the property sufficient to support their takings suit.

■ The Color of Title Act is, in effect, an exception to 28 U.S.C. § 2409a(n) (1988). Section 2409a(n) prevents anyone from acquiring an interest in Government property by adverse possession. The Color of Title Act, however, allows long-term possessory claimants to follow a statutory procedure to acquire a land patent from the Government. 43 U.S.C. § 1068. The Act requires the Secretary of Interior to issue a patent for land held by a private party for more than twenty years in "good faith and in peaceful, adverse, possession." *Id.* To qualify for a patent grant, an applicant must have improved or cultivated the land. The Act also requires the applicant to pay not less than $1.25 per acre for the patent. The Act also precludes issuance of a patent until resolution of all conflicting claims to the property. Thus, until the Secretary determines that an applicant has met the requirements of the Act, an applicant secures no vested property interest in the claimed land. A claimant cannot otherwise obtain an interest in Government property by long-term possession. 28 U.S.C. § 2409a(n).

■ A series of Supreme Court cases underscores that claimants under the Color of Title Act acquire no property interest until satisfaction of the Act's requirements. The Supreme Court extensively interpreted the General Pre-emption Act, 5 Stat. 453, the predecessor to the Color of Title Act. With respect to property conveyance, both acts operate identically. *Lipscomb*, 906

F.2d at 550. Therefore, this court may rely on the Supreme Court cases to inform interpretation of the Color of Title Act. The Supreme Court clarified that claimants under the General Pre-emption Act enjoy rights of priority to purchase, not ownership:

A mere entry upon land, with continued occupancy and improvement thereof, gives no vested interest in it. It may, however, give ... a privilege of pre-emption. But this is only a privilege conferred on the settler to purchase land in preference to others.... His settlement protects him from intrusion or purchase by others, but confers no right against the government.

*Frisbie v. Whitney*, 76 U.S. (9 Wall.) 187, 195, 19 L.Ed. 668 (1870) (quoting 10 Op. Att'y Gen. 57 (1861)); *see also, Nix v. Allen*, 112 U.S. 129, 136, 5 S.Ct. 70, 74, 28 L.Ed. 675 (1884); *Wirth v. Branson*, 98 U.S. 118, 121, 25 L.Ed. 86 (1878); *Atherton v. Fowler*, 96 U.S. 513, 518, 24 L.Ed. 732 (1878).

■ In sum, the Cavins possessed no compensable property interest before payment of the $7,390 in 1984. As claimants under the Color of Title Act from 1976 to 1984, the Cavins enjoyed only a priority over other potential claimants. The Cavins had no ownership rights to assert against the Government.

■ Thus, because they had no property interest protected by the Fifth Amendment, the Cavins could not claim damages for activities on the Soquel property before 1984. The IBLA's grant of the Cavins' Color of Title application and the Cavins' subsequent payment of $7,390 did not create a property interest that related back to the Forest Service's activities before 1984. The Claims Court properly dismissed those takings claims.

### STATUTE OF LIMITATIONS

■ Under 28 U.S.C. § 2501 (1988), "[e]very claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." The Claims Court found that the Cavins' takings claims accrued not later than 1969.

As explained above, this court need not discuss the Claims Court's application of the time bar to claims for pre–1984 Forest Service activities. Nevertheless, the Cavins' complaint includes an allegation that the Forest Service continued to use Road 6S–10 after 1984. A BLM decision based on the IBLA judgment granting the Cavins' Color of Title application recognized that the Cavins purchased the Soquel property free from encumbrances:

The Benton C. Cavin, 83 IBLA 130 (1984) decision stipulates that the BLM was without authority to grant a right-of-way reservation after the filing of Benton C. Cavin Class 1 Color-of-Title application, which gave Benton C. Cavin a vested right to purchase the land *without* any additional encumbrances, save those mandated by law. (emphasis in original).

The Cavins alleged in their 1987 Claims Court complaint that the Forest Service continued to use the road for government activities after the Cavins' purchase in 1984. The Cavins reiterated this allegation in their brief and oral argument before this court. Neither Government counsel nor the Forest Service challenged the allegation.

The Claims Court did not address the question of whether post–1984 use of road 6S–10 constitutes a taking by the Forest Service. Because the Cavins filed their complaint in 1987, this count is not time barred. Therefore, this court reverses the Claims Court determination that all the Cavins' claims were time barred. On remand, the Claims Court will have the opportunity to consider whether the Cavins' allegation that the Forest Service has used since 1984, and continues to use, Road 6S–10 constitutes a compensable taking.

### TORT CLAIMS

■ The Cavins also make several allegations which may sound in tort. The Claims Court first correctly noted that it cannot exercise jurisdiction over claims sounding in tort. *See* 28 U.S.C. § 1491

(1988); *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 178 Ct.Cl. 599 (1967). The court then refused to transfer the claims to a district court. Section 2401(b) of Title 28 fully explains and supports the Claims Court's refusal to transfer:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b) (1988). Both the two-year and the six-month time bars in this provision apply to the Cavins' tort claims.

The Cavins presented these claims administratively to the Department of Agriculture, which denied them. The Cavins did not appeal the denials in the district court within six months of the denial. Thus, the six-month time bar applies to all claims presented to the Department. Moreover, because these claims involve actions which commenced before 1981, the two-year time bar applies to any claims not presented to the Department. The Claims Court, evincing sensitivity to the Cavins' legal situation, took care to advise them in writing, and orally, to file in the district court to preserve any tort action. The Cavins did not heed this advice. The Claims Court did not abuse its discretion in refusing to transfer any tort claim to a district court. The Claims Court was correct that the Tort Claims Act bars the Cavins' untimely claims.

Because remanding for further consideration, this court need not resolve the Government's appeal (No. 91–5106) of the award of costs to the Cavins. On remand, the Claims Court has jurisdiction to consider the Cavins' claim involving Road 6S–10. Therefore, the court may consider the issue of costs associated with the Cavins' entire action.

### CONCLUSION

For the foregoing reasons, this court affirms that part of the Claims Court's judgment dismissing the Cavins' claims based on alleged pre–1984 takings by the Forest Service. This court also affirms that part of the Claims Court's judgment dismissing any tort claims for lack of subject matter jurisdiction and the refusal to transfer any such claims to the district court.

This court reverses that part of the Claims Court's judgment dismissing the Cavins' claim against the Forest Service for post–1984 use of Road 6S–10 and remands the case for further action in accordance with this opinion.

AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED.