Patrick ROEDLER, Thomas McDonough, Jeannie Strobel, Richard Palmer, Noreen Hoft, and HJ Company, Plaintiffs–Appellants,

v.

DEPARTMENT OF ENERGY, Secretary of the Treasury, and United States, Defendants–Appellees,

v.

Northern States Power Company, Defendant–Appellee.

No. 00–1204.

United States Court of Appeals, Federal Circuit.

DECIDED: July 6, 2001.

John A. Cochrane, Cochrane & Bresnahan, P.A., of St. Paul, MN, argued for plaintiffs-appellants. Of counsel on the brief were Brian B. O'Neill, Richard A. Duncan, Elizabeth H. Schmiesing, and Vanya S. Hogen, Faegre & Benson LLP. Of counsel was Rodney A. Wilson, Wilson Law Office, P.A., of Minneapolis, MN.

Dana J. Martin, Attorney, Appellate Staff, Washington, DC, argued for defendants-appellees, Department of Energy, Secretary of the Treasury, and the United States. On the brief were J. Christopher Kohn, Director; and Sandra P. Spooner, Deputy Director. Of counsel was Douglas N. Letter, Attorney.

Timothy R. Thornton, Briggs and Morgan, P.A., argued defendant-appellee, Northern States Power Company. With him on the brief was Michael C. Krikava. Of counsel on the brief was Michael C. Connelly, Deputy General Counsel, Northern States Power Company, of Minneapolis, MN.

Thomas Erik Bailey, Assistant Attorney General, and Julia E. Anderson, Assistant Attorney General, of St. Paul, MN, for amicus curiae State of Minnesota, Minnesota Department of Commerce. With them on the joint amici brief for Northern States Power Company, was Mike Hatch, Attorney General, State of Minnesota.

Before NEWMAN, MICHEL, and RADER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

The plaintiffs, Patrick Roedler *et al.*, are ratepaying customers for electric power produced from nuclear fuel by Northern States Power Company. The rates paid by these customers include charges that, according to the complaint, are intended to pay for the storage and disposal of spent nuclear fuel and other nuclear waste, pursuant to federal statute and implementing contracts between the United States Department of Energy (DOE) and Northern States Power. The plaintiffs, proposing class action certification, seek recovery from the United States of all or part of the amounts that they paid in accordance with the statute and contracts, based on the established breach of the contracts by the United States. The United States District

Court for the District of Minnesota dismissed the complaint, ruling that none of the asserted grounds stated a claim upon which relief could be granted.[1]

## BACKGROUND

The Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101 *et seq.*, was enacted "to establish the Federal responsibility, and a definite Federal policy, for the disposal of such waste and spent fuel." 42 U.S.C. § 10131(b)(2). The Act requires the producers of nuclear-generated power to enter into contractual arrangements with the Department of Energy in accordance with the terms of a Standard Contract, 10 C.F.R. § 961.11, whereby statutory fees are paid by the producers to the Nuclear Waste Fund of the United States Treasury, and the DOE will dispose of their accumulated and future nuclear waste. By statute, and as implemented by the Standard Contract, the DOE agreed to accept this nuclear waste for disposal within fifteen years, that is, by January 31, 1998.

In 1994 the DOE announced that it would not meet the statutory and contractual deadline of January 31, 1998. Notice of Inquiry, 59 Fed.Reg. 27,7007 (1994). This announcement, which has been followed by further delay, led to litigation wherein various power companies sought relief based on the government's non-performance of its contractual obligations. In *Indiana Michigan Power Co. v. Department of Energy*, 88 F.3d 1272, 1276 (D.C.Cir.1996), and *Northern States Power Co. v. Department of Energy*, 128 F.3d 754, 759 (D.C.Cir.1997), the District of Columbia Circuit held that the government's failure to meet this deadline was a breach of contract. This ruling led to further

litigation in which the utility companies seek damages in the Court of Federal Claims. Appellate rulings on various threshold issues appear at *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed.Cir.2000) and *Northern States Power Co. v. United States*, 224 F.3d 1361 (Fed.Cir.2000).

The plaintiffs herein seek to recover from the United States the fees that Northern States Power paid into the Nuclear Waste Fund in accordance with the statute and the contracts between DOE and Northern States Power. The plaintiffs contend that these fee payments should be restored directly to them, lest any recovery by Northern States Power be diverted to benefit the utility's shareholders instead of the ratepayers. The plaintiffs state that with the adjudication by the D.C. Circuit that DOE breached the contracts "the only issue that remains with respect to this breach is who (Northern States Power's shareholders or its customers) is entitled to recover the customers' money."

The fee was set at the rate of 1.0 mil per kilowatt-hour of nuclear-generated power produced starting in 1983, plus a fee for accumulated pre–1983 waste. Northern States Power has paid and apparently continues to pay the fee, as a condition of the continuing operation of its nuclear-fueled electricity generating facilities. The plaintiffs also seek relief from this continuing charge, in view of the government's breach of contract.

The district court held that the plaintiffs do not have an implied-in-fact contract-based claim against the United States, and that they are not third party beneficiaries of the contracts between the Department

---

1. *Roedler v. Dep't of Energy*, No. 98–1843 (D.Minn. Dec.23, 1999).

of Energy and Northern States Power. The court also held that the facts of this case do not support a takings claim under the Fifth Amendment of the Constitution, and that none of plaintiffs' other theories states a claim upon which relief may be granted. The court dismissed the complaint, and this appeal followed.

## JURISDICTION

The government and Northern States Power challenge the jurisdiction of both the district court and this court. We conclude that both courts have the requisite jurisdiction.

The plaintiffs' suit was brought in the district court on grounds that included claims under 28 U.S.C. § 1346(a)(2), the "Little Tucker Act," which assigns concurrent jurisdiction to the district courts and the Court of Federal Claims for Tucker Act claims that do not exceed $10,000. The plaintiffs represented to the district court that their individual recoveries would be limited to the jurisdictional amount, and on this basis the case proceeded. The district court did not reach how the $10,000 cap would be calculated should the plaintiffs prevail, although this aspect was not free of dispute.

■ We discern no flaw in this procedure, which accords with precedent. A district court may permit multi-plaintiff Little Tucker Act cases to proceed when each plaintiff waives recovery in excess of $10,000, even when potential liability exceeds $10,000. *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995). *See also, e.g., Smith v. Orr,* 855 F.2d 1544, 1552 (Fed.Cir.1988) (a Little Tucker Act case may proceed in the district court if recovery is limited to $10,000). Thus the district court had jurisdiction of these claims.

■ The appeal of cases based in whole or in part on the Little Tucker Act, together with any related claims, is assigned exclusively to the Federal Circuit; bifurcation of the appeal, whether based on issues or applicable law, is improper. *See United States v. Hohri,* 482 U.S. 64, 73–74, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987) (appeal of a district court decision on claims under the Little Tucker Act and the Federal Tort Claims Act is consigned to the Federal Circuit as to all issues). Thus this appeal is properly before the Federal Circuit.

## THE CONTRACT–DERIVED CLAIMS

The plaintiffs argue that they are third party beneficiaries of the contracts between DOE and Northern States Power, and that the district court erred in its contrary ruling.

■ Third party beneficiaries of a contract to which the United States is a party may assert a claim against the United States, in accordance with the law governing third party claims. Applying the federal common law that governs the contracts of the United States, *see United States v. County of Allegheny,* 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209 (1944); *Fomby–Denson v. Dep't of the Army,* 247 F.3d 1366, 1373–74 (Fed.Cir. 2001), and taking note that a contract with the United States is to be construed and the rights and duties of the parties determined by application of the same principles of law as if the contract were between private individuals, *see Mobil Oil Exploration & Producing Southeast, Inc. v. United States,* 530 U.S. 604, 608, 120 S.Ct. 2423, 147 L.Ed.2d 528 (2000), we apply the principles of third party beneficiary law as developed in the common law and explained by precedent, *see Montana v.*

*United States,* 124 F.3d 1269, 1273 (Fed. Cir.1997) (applying general law of third party beneficiary claims to the United States as a contracting party).

■ To establish a right of action by a third person who is not a party to or identified in the contract as a beneficiary of its performance, the contract must show the intention of the contracting parties to provide a benefit to that person. *See German Alliance Insurance Co. v. Home Water Supply Co.,* 226 U.S. 220, 230, 33 S.Ct. 32, 57 L.Ed. 195 (1912) (the benefit to the third party under the contract must be direct); *Caguas Central Federal Savings Bank v. United States,* 215 F.3d 1304, 1309 (Fed.Cir.2000) (the benefit to the third party must be intended by the contract, whether expressly stated or implicit); *Montana,* 124 F.3d at 1273 (the intended beneficiary need not be specifically identified, but must be in a class clearly intended to be benefitted).

■ When the intent to benefit the third party is not expressly stated in the contract, evidence thereof may be adduced. For determination of contractual and beneficial intent when, as here, the contract implements a statutory enactment, it is appropriate to inquire into the governing statute and its purpose. *See, e.g., Rendleman v. Bowen,* 860 F.2d 1537, 1541–42 (9th Cir.1988) (when the contract terms are mandated by Congress, statutory intent is highly relevant to contractual interpretation); *American Hosp. Ass'n. v. Schweiker,* 721 F.2d 170, 183 (7th Cir.1983) (legislative intent is relevant when the contract implements a statute); *Busby School of Northern Cheyenne Tribe v. United States,* 8 Cl.Ct. 596, 602 (1985) (the court considers statute, regulations, and policy, in determining whether plaintiffs are third party beneficiaries).

■ The district court observed that neither the Standard Contract nor the Nuclear Waste Policy Act mentions the customer/users of nuclear-generated power as intended direct beneficiaries of these nuclear waste disposal arrangements. The Act describes its purpose as to "provide a reasonable assurance that the public and the environment will be adequately protected" from the hazards of nuclear waste. 42 U.S.C. § 10131(b)(1). The preamble of the Standard Contract repeats that the purpose is to protect public health and safety and the environment. 10 C.F.R. § 961.11. The district court, reviewing these statements of policy, found that they manifest no intent, either express or implied, to benefit the customer/users of nuclear-generated power other than as members of the general public. The district court reasoned that since the public at large has no right of action under this contract and no entitlement to compensation for its breach by the United States, neither do these plaintiffs.

The plaintiffs do not dispute that there is an important public benefit to nuclear waste disposal. However, the plaintiffs assert that they are not acting as members of the general public. They state that they directly benefit from disposal of the waste produced from the nuclear power generated by Northern States Power, and that their direct interest arises because they, as consumers of this nuclear-generated power, paid the charges assessed against Northern States Power under the DOE contract. They state that this places them in the position of direct and intended beneficiaries of the contract between Northern States Power and the government. The plaintiffs distinguish this action from a suit by members of the public against a private party who contracted with the government to provide services to

the public, such as was referred to in *Montana*, 124 F.3d at 1273 n. 6, wherein this court remarked that the failure of a government contractor to provide services does not create a cause of action in members of the public unless they can show a direct right to compensation. The plaintiffs state that since they are not suing as members of the public, it is not relevant whether the contract explicitly grants them a right of enforcement.

The plaintiffs point to the legislative history of the Nuclear Waste Policy Act as showing the understanding of the government and the power companies that the waste disposal fees would be borne by the customer/users of the power. The legislative record supports the position that Congress intended that the nuclear waste disposal costs would be borne by the "beneficiaries" of nuclear power. *See, e.g.,* 128 Cong. Rec. 32,556 (1982) (statement of Senator McClure, floor manager, that "this bill for the first time would provide a direct financial linkage between the beneficiaries of nuclear power and the cost for interim management and ultimate disposal for nuclear wastes"). However, the district court did not accept the plaintiffs' position that these relationships converted the nuclear power users into third party beneficiaries of the contracts between DOE and Northern States Power. The district court distinguished between the contractual obligation of the utility company to pay the United States for the disposal of its nuclear-generated waste, and the utility's charges to its customers as users of the power. The court held that the charges to the users did not convert the users into third party beneficiaries, with rights of remedy upon breach by the government.

We agree that the plaintiffs' status as customers and users of the nuclear-generated power does not give them third party beneficiary rights under the utility's contract with the government. The statute places responsibility for payment of the waste disposal fees on "the generators and owners of such waste and spent fuel, that will ensure that the costs of [disposal] will be borne by the persons responsible for generating such waste and spent fuel." 42 U.S.C. § 10131(b)(4). The Standard Contract recites that the "costs associated with the ... disposal of SNF [spent nuclear fuel] will be borne by the owners and generators under contract with DOE for disposal services." 10 C.F.R. § 961.11. These provisions do not evidence a contractual intent to confer a direct benefit upon the consumers of the power. Although the plaintiffs argue that they directly benefit from continued receipt of nuclear-fueled electric power, whose generation is conditioned on payment of the disposal fees by Northern States Power, that benefit did not cease with the government's breach. We agree with the district court that the plaintiffs have not established a direct and intended benefit sufficient to create a third party right of action against the government.

█ The plaintiffs also raised before the district court an implied-in-fact contract theory of recovery. An implied-in-fact contract requires a mutual intent to contract including an offer, acceptance, and consideration. *See Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed. Cir.2001). The district court correctly held that the existence of an express contract between the United States and Northern States Power, establishing their mutual obligations with respect to the fees at issue, negates the existence of an implied-in-fact contract between the United States and the utility's customers on the

same subject matter. We agree that the evidence does not support the criteria of an implied-in-fact contract between these plaintiffs and the United States. *See, e.g., Trauma Service Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997) (no inference of an intent to be contractually bound).

We affirm that these plaintiffs do not have a Tucker Act claim against the United States.

## THE TAKINGS CLAIM

■ Alternatively, the plaintiffs press the theory that the United States took their property for public use without just compensation, in contravention of the Takings Clause of the Fifth Amendment of the Constitution. The plaintiffs argue that the government's "collection of fees from plaintiffs for a storage facility that was not constructed" constitutes a taking of their property (that is, their money), in that the failure of performance by the government is a failure of just compensation. The plaintiffs refer to the legislative purpose of the Nuclear Waste Policy Act to assess the cost of nuclear waste disposal upon the users of the nuclear-generated power, and state that "Congress created property rights in Plaintiffs by contracting with NSP [Northern States Power] to use Plaintiffs' money to fund the NWF [Nuclear Waste Fund]."

The district court dismissed this claim, ruling that the plaintiffs did not possess a compensable property interest in the payments to the Nuclear Waste Fund for disposal of the utility's nuclear waste and spent fuel. The court concluded that the charge by the utility to the customer/user of the nuclear-generated power, even if the charge served to fund the utility's payment obligation to the United States, was not a taking of property from the customer/user by the United States. For the purpose of reviewing the dismissal under Fed. R.Civ.P. 12(b)(6) we accept the plaintiffs' premise that their utility charges included the amount of the disposal fee, for the Minnesota Public Utilities Commission authorized the charge. *See Leatherman v. Tarrant County,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (factual allegations of complaint must be accepted); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (all reasonable inferences must be drawn in favor of the claimant).

■ To support a takings claim under the Fifth Amendment, there must be a legally cognizable property interest. *Skip Kirchdorfer, Inc. v. United States,* 6 F.3d 1573, 1580 (Fed.Cir.1993). Not every governmental assessment has the potential for generating a compensable taking. *United States ex rel. Tennessee Valley Authority v. Powelson,* 319 U.S. 266, 281, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943). The Court explained in *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 223–24, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986) that there is no set formula for identifying a prohibited taking, but that relevant inquiries include the nature of the governmental action, its economic impact, and the extent to which the action "interfered with distinct investment-backed expectations," quoting *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). In *United States v. Sperry,* 493 U.S. 52, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989) the Court explained that an assessment of a monetary fee differs from other property for Fifth Amendment purposes:

It is artificial to view deductions of a percentage of a monetary award as

physical appropriations of property. Unlike real or personal property, money is fungible. . . . If the deduction in this case were a physical occupation requiring just compensation, so would be any fee for services, including a filing fee that must be paid in advance. Such a rule would be an extravagant extension of *Loretto.*

*Id.* at 62, 110 S.Ct. 387. The district court found that the plaintiffs lacked a property interest in these fees.

The parties debate the nature of the plaintiffs' property interest. The government argues that the plaintiffs did not have an "ownership interest" in the money paid into the Nuclear Waste Fund, citing *Cavin v. United States,* 956 F.2d 1131, 1134 (Fed.Cir.1992) for the principle that to maintain a takings claim the plaintiff must be the owner of the property at the time of the taking. The plaintiffs point out that money is property and that the fees represent money that belonged to them and was exacted by governmental action, citing *United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 89 L.Ed. 311 (1945) for the principle that the right of property is the right "to possess, use and dispose of" the thing at issue. The government responds that the plaintiffs "simply paid their monthly electricity bills," providing revenue to the utility company which became the property of the utility.

The district court held that the facts and relationships of this case do not establish a taking of property from these plaintiffs by the United States. The governmental exaction, insofar as these plaintiffs are affected by it, is the assessment (by pass-through from the utility) of the fees to pay for disposal by the United States of the utility's nuclear waste. It is neither a physical invasion of plaintiffs' real or personal property nor an appropriation of the plaintiffs' assets for a use unrelated to the levy. *See Sperry,* 493 U.S. at 62, 110 S.Ct. 387 (distinguishing a fee for services from a physical occupation); *Connolly,* 475 U.S. at 226, 106 S.Ct. 1018 (the payment of money to fund a reasonable legislative purpose is not a taking).

Plaintiffs do not contest the reasonableness of the assessment; they argue only that it is the government's failure of performance that produced a failure of just compensation. However, constitutional principles are not violated by requiring those benefitting from nuclear-generated power to pay for the disposal of its waste; and it must be recognized that the waste must ultimately be disposed of. The rate of one mil per kilowatt-hour, paid by the consumers for power they actually consumed, is a reasonable economic burden. *See Dolan v. City of Tigard,* 512 U.S. 374, 386, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (the economic burden should bear a reasonable relationship to the societal burden imposed by the governmental action). The problems of disposal of nuclear waste have been present from the inception of nuclear-generated power, and disposal costs have always been part of the cost of power. The ultimate levy of these costs on the consumers of the power does not violate Fifth Amendment principles.

In addition, the plaintiffs' assertion that injury is derived from the government's failure to meet the statutory and contractual deadline does not satisfy the particularized "injury in fact" required to assert a constitutional violation. On somewhat similar facts, the court in *Ben Oehrleins v. Hennepin County,* 115 F.3d 1372, 1379–81 (8th Cir.1997) held that the customers of waste haulers, who paid passed-through

costs to the county and thus suffered indirect economic injury by the county's failure of performance, do not have standing to assert a violation of the Commerce Clause, although the waste haulers themselves were held to have such standing. This reasoning is similarly applicable to the utility customers herein.

The plaintiffs also argue that since the promised nuclear waste disposal was not provided, the assessment of the fee was a confiscation in terms of *Branch v. United States,* 69 F.3d 1571, 1576 (Fed.Cir.1995), wherein the court observed that municipal special assessments may constitute an unlawful taking if there is a flagrant abuse tantamount to a "confiscation of particular property." *See Houck v. Little River Drainage Dist.,* 239 U.S. 254, 264–65, 36 S.Ct. 58, 60 L.Ed. 266 (1915). The government responds that no such abuse here exists, that the nuclear waste still requires disposal to which these fees are committed, and that there has been no confiscation because the fees have not been diverted from their statutory purpose. We agree that this aspect does not establish a confiscation, in the present unresolved posture of nuclear waste disposition.

 The plaintiffs also argue that their contract rights were "taken" without just compensation. It is correct that "[c]ontract rights are a form of property and as such may be taken for a public purpose provided that just compensation is paid." *United States Trust Co. v. New Jersey,* 431 U.S. 1, 19 n. 16, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). However, in view of our ruling that these plaintiffs have no contract rights, this position can not provide grounds of relief.

 The plaintiffs also argue that the collection from them of the statutory/contractual disposal fee by Northern States Power is tantamount to a government imposed payment from one private entity to another without just compensation, also asserted to be barred by the Fifth Amendment. In *Eastern Enterprises v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998) the Court recognized that a statutorily mandated payment of money between private parties is not necessarily a prohibited taking, but that each case must be decided on its facts. As in *Connolly,* 475 U.S. at 223, 106 S.Ct. 1018, "[g]iven the propriety of the governmental power to regulate, it cannot be said that the Taking Clause is violated whenever legislation requires one person to use his or her assets for the benefit of another."

On review of the district court's ruling in light of all of the arguments offered,[2] we affirm that these plaintiffs have not established grounds supporting violation of the Fifth Amendment, and that the takings claim was properly dismissed.

*Conclusion*

The plaintiffs do not have legally cognizable grounds for recovering from the United States the fees that Northern States Power paid into the Nuclear Waste Fund. The dismissal for failure to state a claim on which relief can be granted is affirmed.

*AFFIRMED.*

---

2. In view of our decision, we do not reach the question of whether the plaintiffs' action is an impermissible challenge to the electric rates approved by the Minnesota Public Utilities Commission in violation of the filed rate doctrine, an issue presented by Northern States Power on this appeal. Nor is it before us to decide whether these plaintiffs have any rights with respect to any recovery from the United States by Northern States Power deriving from the government's breach of contract.